IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MEDFORD DIVISION

EUGENA G-N.,[1]

       Plaintiff,

   vs.

COMMISSIONER OF SOCIAL SECURITY,

       Defendant.

_____

Case No. 1:20-cv-00853-AA
**OPINION AND ORDER**

AIKEN, District Judge:

    Plaintiff Eugena G-N. seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying plaintiff's application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). For the reasons below, the decision of the Commissioner is AFFIRMED, and this case is DISMISSED.

_____

[1]    In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental party or parties in this case. Where applicable, this opinion uses the same designation for the non-governmental party's immediate family member.

Page 1 – OPINION AND ORDER

## BACKGROUND

On June 9, 2017, plaintiff filed a Title II application for a period of disability and disability insurance benefits as well as a Title XVI application for supplemental security income. Tr. 13. Both applications alleged disability beginning on May 1, 2016. The applications were denied initially and upon reconsideration and, at plaintiff's request, a video hearing was held before an Administrative Law Judge ("ALJ") on March 21, 2019. *Id.* On May 28, 2019, the ALJ issued a decision finding plaintiff not disabled. Tr. 24. On April 1, 2020, the Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner. Tr. 1. This appeal followed.

## DISABILITY ANALYSIS

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r*, 648 F.3d 721, 724 (9th Cir. 2011).

> The five-steps are: (1) Is the claimant presently working in a substantially gainful activity? (2) Is the claimant's impairment severe? (3) Does the impairment meet or equal one of a list of specific impairments described in the regulations? (4) Is the claimant able to perform any work that he or she has done in the past? And (5) Are there

significant numbers of jobs in the national economy that the claimant
can perform?

*Id.* at 724-25; *see also Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

The burden of proof falls to the claimant at steps one through four and with the Commissioner at step five. *Id.* at 953-54. At step five, the Commissioner must show that the claimant can adjust to other work after considering the claimant's residual functional capacity ("RFC"), age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the Commissioner fails to meet this burden, then the claimant is disabled. *Id.* If, however, the Commissioner proves that the claimant can perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Id.*; *see also Bustamante*, 262 F.3d at 953-54.

## THE ALJ'S FINDINGS

The ALJ performed the sequential analysis. At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since the alleged onset date of May 1, 2016. Tr. 15.

At step two, the ALJ found that plaintiff had the following severe impairments: major depressive disorder, anxiety disorder, and PTSD. Tr. 16. The ALJ also found that plaintiff had the following severe impairments on her shoulder, all of which were greater on the right shoulder than the left: bilateral shoulder mild AC arthritis, mild primary glenohumeral arthritis, and calcified tendonitis. *Id.* At step three, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment. *Id.*

The ALJ found plaintiff had the RFC to perform light work with the following additional limitations: she could do occasional pushing and pulling with her non-dominant right upper extremity; occasional overhead reaching; and frequent reaching in all other directions. Plaintiff is limited to no climbing of ladders and scaffolds and no crawling. Additionally, she is limited to simple, routine tasks with gradual changes in work routine consistent with a reasoning level of 2 and unskilled work. Tr. 18.

At step four, the ALJ found that plaintiff was unable to perform any past relevant work as a home attendant, a customer complaint service supervisor, or a complaint clerk. Tr. 22. At step five, the ALJ found that plaintiff was capable of performing work as a marker, router, or routing clerk. Tr. 23.

## STANDARD OF REVIEW

A reviewing court shall affirm the decision of the Commissioner if it is based on proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Comm'r*, 359 F.3d 1190, 1193 (9th Cir. 2004). Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation and internal quotation marks omitted). In reviewing the Commissioner's alleged errors, this Court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusion." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986).

When the evidence before the ALJ is subject to more than one rational interpretation, courts must defer to the ALJ's conclusion. *Batson*, 359 F.3d at 1198 (citing *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995)). A reviewing court, however, cannot affirm the Commissioner's decision on a ground that the agency did not invoke in making its decision. *Stout v. Comm'r*, 454 F.3d 1050, 1054 (9th Cir. 2006). Finally, a court may not reverse an ALJ's decision on account of an error that is harmless. *Id.* at 1055-56. "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009).

## DISCUSSION

Plaintiff contends that the ALJ (1) improperly rejected plaintiff's subjective symptom testimony; (2) improperly addressed the medical opinion evidence; and (3) improperly rejected the lay witness testimony. Additionally, because the ALJ did not properly consider all the evidence, the RFC determination did not account for all of plaintiff's limitations and thus resulted in an inaccurate determination of potential jobs for plaintiff at step five.

## I.    Medical Opinion Evidence

Under the new regulatory scheme that affects cases filed on or after March 27, 2017, like plaintiff's case, an ALJ must articulate the persuasiveness of the medical opinions in the record. 20 C.F.R. §§ 404.1520c(a)-(b), 416.920c(a)-(b). Supportability and consistency are the two most important factors that determine the

persuasiveness of a medical opinion. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). The ALJ may also consider the relationship with the claimant, specialization, and other factors like "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements." 20 C.F.R. §§ 416.920c(c)(3)-(5). "An ALJ is not required to explain how they considered the secondary factors unless they find that two or more medical opinions about the same issue are equally well-supported and consistent with the record, but not identical." *Derek M. v. Comm'r*, No. 3:20-CV-01713-AC, 2022 WL 443980, at *7 (D. Or. Feb. 14, 2022) (citations omitted). Ultimately, the court must determine whether the ALJ supported his decision with substantial evidence. 42 U.S.C. § 405(g); *Baston*, 359 F.3d at 1193.

In this case, Kerri Hecox, M.D., served as an examining physician to plaintiff and submitted a Physical Residual Functional Capacity Assessment checklist dated March 14, 2019. Tr. 505-06. Dr. Hecox diagnosed plaintiff with bilateral shoulder calcific tendonitis, carpal tunnel, and chronic knee pain. Tr. 505. In this form, Dr. Hecox opined that plaintiff could frequently lift less than 10 pounds; stand for 2 hours in an 8-hour workday; sit for 6 hours in an 8-hour workday; and could perform limited pushing and pulling in her upper extremities. *Id.* Dr. Hecox also noted plaintiff could occasionally balance, stoop, and crouch, but could never climb ramps, ladders, ropes, scaffolds, or stairs, and could never kneel or crawl. *Id.* Additionally, plaintiff can perform limited reaching in all directions and limited fingering. Tr. 506. Dr. Hecox

opined plaintiff should avoid concentrated exposure to wetness, noise, vibration, fumes, odors, dusts, gases, poor ventilation, and hazards, and she should avoid even moderate exposure to extreme cold, extreme heat, humidity, and hazards. *Id.* For the reasons explained below, the ALJ found that Dr. Hecox's opinion was not supported by or consistent with the record.

      A.    *Supportability*

"Under the supportability factor, more weight is generally accorded to medical opinions that are supported by 'relevant medical evidence' and the medical source's explanation." *Derek M.*, 2022 WL 443980, at *8 (citing 20 C.F.R. §§ 404.1520(c)(1); 416.920c(c)(1)).

The ALJ deemed Dr. Hecox's opinion unpersuasive because the checklist Dr. Hecox submitted simply stated plaintiff's conditions and alleged limitations without explaining how she came to her conclusions. Tr. 21. Namely, Dr. Hecox diagnosed plaintiff with carpal tunnel syndrome without identifying any basis for doing so. There is no mention of carpal tunnel or complaints of associated symptoms throughout the record. Similarly, Dr. Hecox assessed various environmental limitations without explaining the bases for those determinations. Like with the carpal tunnel diagnosis, there is no evidence or mention of environmental limitations throughout the record. Dr. Hecox simply checked boxes on a form rather than explaining her reasoning.

B.    *Consistency*

"Generally, medical opinions that are consistent with the record as a whole are accorded more weight than those that are not." *Derek M.*, 2022 WL 443980, at *9 (citing 20 C.F.R. §§ 404.1527(c); 416.927(c)(6)).

Here, the ALJ found that some of Dr. Hecox's diagnoses were inconsistent with the record. Tr. 21. For example, Dr. Hecox diagnosed plaintiff with calcific tendonitis, but the objective imaging taken from December 7, 2017, showed a "very small amount of residual calcific tendonitis but the majority is resolved." Tr. 926. Dr. Hecox did not provide any explanation for her diagnosis.

Moreover, plaintiff's activities of daily living were inconsistent with Dr. Hecox's opinion and the ultimate determination that plaintiff should be limited to sedentary activity. Plaintiff grocery shops "every week, 3 or 4 times a month" for "about 1.5 hours." Tr. 269. She also drives to medical appointments and completes household tasks, including cooking, doing the dishes, watering the lawn, sweeping, and mopping. Tr. 47-49, 266-69. These activities of daily living, along with the objective imaging in the record showing most of the calcific tendonitis in plaintiff's shoulder to be resolved are inconsistent with Dr. Hecox's opinion. Given the lack of supportability and consistency in Dr. Hecox's opinion, the ALJ adequately supported his determination that Dr. Hecox's opinion was unpersuasive. *See* 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).

## II.    Subjective Symptom Testimony

Plaintiff contends that the ALJ erred by discounting her subjective symptom testimony. To determine whether a claimant's testimony is credible, an ALJ must perform a two-stage analysis. 20 C.F.R. § 416.929. The first stage is a threshold test in which the claimant must produce objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged. *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012). At the second stage of the credibility analysis, absent evidence of malingering, the ALJ must provide clear and convincing reasons for discrediting the claimant's testimony regarding the severity of symptoms. *Carmickle v. Comm'r*, 533 F.3d 1155, 1160 (9th Cir. 2008).

The ALJ must make findings that are sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony. *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id.* (internal quotation marks and citation omitted). An ALJ may use techniques such as prior inconsistent statements concerning the symptoms, testimony that appears less than candid, unexplained failure to seek treatment or follow a prescribed course of treatment, or a claimant's daily activities to evaluate the plaintiff's testimony. *Id.*

In this case, plaintiff worked as an in-home health care attendant from 2014 to 2015. Tr. 40. She cared for one client by bathing her, helping her get out of bed and

into the bathroom, cooking, shopping, and brushing her hair. Tr. 41-42. Plaintiff had to stop doing this work because the pain in her arm worsened. Tr. 42.

Plaintiff did not receive her first shoulder injection until September of 2016. Tr. 44, 383. She then attended physical therapy, which yielded "great improvement with conservative therapy" on her left shoulder, but she ultimately did not meet her physical therapy goals. Tr. 46, 362-82. In April 2017, plaintiff underwent an arthroscopic rotator cuff repair and excision of calcific tendonitis on her right shoulder. Tr. 43, 982. Plaintiff testified she reinjured her right shoulder three months later by grabbing a falling windowpane to keep it from hitting her face. Tr. 46. Plaintiff stated she received an injection in her right shoulder that did not mitigate her pain and has been in pain ever since. Tr. 47. Plaintiff complained to her mental health providers about the shoulder pain but never sought further treatment following the failed injection. Tr. 20, 759, 925.

With regard to her mental health, plaintiff testified she attended counseling until September 2018. She stopped attending appointments due to car troubles and an alcohol relapse that resulted in her going to a detox center. Tr. 49-50. Plaintiff did not attend her prescribed counseling following release from the detox center and has not been sober since. Tr. 52. She testified she drinks to counteract her shoulder pain. Tr. 53.

In relation to plaintiff's activities of daily living, plaintiff testified that she picks a task, like laundry, for each day and does it. Tr. 47-48. She testified she grocery

shops every so often because she can only carry a few items at a time and sometimes is forced to leave items in the car because she cannot carry them inside. Tr. 48. Plaintiff drives herself to the grocery store and medical appointments. Tr. 49.

The ALJ found that plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms but that plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record[.]" Tr. 19.

The ALJ provided multiple bases for discounting plaintiff's subjective symptom testimony. First, plaintiff's testimony is inconsistent with the objective medical evidence in the record. "Contradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony." *Carmickle*, 533 F.3d at 1161. Plaintiff testified that she reinjured her right arm three months after surgery and received an injection for the pain. Tr. 46-47. But imaging of plaintiff's shoulder demonstrated that there was only a small amount of calcification remaining, with the "vast majority" having resolved. Tr. 927.

Additionally, the ALJ observed that plaintiff did not seek treatment for her shoulder pain after December 2017. Tr. 20. "The ALJ is permitted to consider lack of treatment in his credibility determination." *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005). The record demonstrates that physical therapy on plaintiff's left shoulder resulted in "great improvement," but that she stopped attending sessions in

March 2017 without meeting many of her goals. Tr. 382, 902. Three months after her surgery, plaintiff claimed she reinjured her right shoulder. Tr. 46. Plaintiff received an injection for this injury but did not seek any further treatment or a second opinion despite her allegations of pain. Tr. 47. Plaintiff argues that she was unable to seek treatment for her shoulder because she was preoccupied with seeking mental health and alcohol addiction treatment. However, plaintiff admitted to not continuing her outpatient treatment following her release from detox in October 2018, demonstrating she was not in treatment for the five months prior to her hearing. Tr. 52. On this record, the Court concludes that the ALJ reasonably considered plaintiff's failure to seek treatment for her shoulder in assessing plaintiff's subjective symptom testimony.

The ALJ also noted that plaintiff's activities of daily living were inconsistent with her subjective symptom testimony. As previously mentioned, plaintiff grocery shops every week, can carry a gallon milk, and completes various household chores. Tr. 47-49, 266-69. Plaintiff told Susan South, PsyD., that she cooks meals from scratch, waters the flowers, visits neighbors, and plays games and goes on social media on her phone. Tr. 92. Additionally, plaintiff took a cooking class in August 2017. Tr. 398. She also told providers she does yard work. Tr. 369.

Plaintiff argues that the ALJ improperly singled out "a few periods of temporary well-being from a sustained period of impairment." *Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014). But both plaintiff's testimony and the record establish

that plaintiff engages in these activities daily. Furthermore, plaintiff contends she can carry no more than a gallon of milk and that she grocery shops every week because she cannot carry a lot at once. However, at the hearing, plaintiff simply testified that the heaviest thing she carries at the grocery store is a gallon of milk. Tr. 24. This does not establish that plaintiff could not carry something slightly heavier than a gallon of milk. Further, plaintiff reported she grocery shops every week to ensure she has fresh produce, not because she cannot carry a lot of groceries into the house. Tr. 269. Given plaintiff's inconsistent reasoning coupled with her activities of daily living, the Court concludes that the ALJ reasonably considered plaintiff's activities of daily living in assessing plaintiff's credibility. The Court ultimately concludes the ALJ supported his decision to reject plaintiff's subjective symptom testimony with substantial evidence.

## III.    Lay Witness Testimony

Plaintiff also contends the ALJ did not properly address the lay witness testimony put forth by Sheryl Lipari and Cindy Mardman. Both Lipari and Mardman submitted letters to the ALJ stating that plaintiff is no longer the person she used to be due to her shoulder pain and mental health struggles. Tr. 334-36.

When evaluating the intensity and persistence of a plaintiff's symptoms, the ALJ "consider[s] all of the available evidence from [] medical sources and nonmedical sources about how [the] symptoms affect [the plaintiff]." 20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1). "In determining whether a claimant is disabled, an ALJ must consider

lay witness testimony concerning a claimant's ability to work." *Stout*, 454 F.3d at 1053 (citing *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993)). An ALJ must give reasons germane to each witness's testimony in order to discount it. *Leon v. Berryhill*, 880 F.3d 1041, 1046 (9th Cir. 2018). But "an ALJ's failure to comment upon lay witness testimony is harmless where the same evidence that the ALJ referred to in discrediting the claimant's claims also discredits the lay witness's claims." *Molina*, 674 F.3d at 1121-22 (internal quotation marks and citation omitted, alterations normalized).

"For claims filed on or after March 27, 2017, the new regulations provide that the ALJs are 'not required to articulate how [they] considered evidence from nonmedical sources,' but the amended regulations 'do not eliminate the need for the ALJ to articulate his assessment of the lay-witness statements.'" *Kenneth Allen O. v. Comm'r*, No. 3:20-CV-01588-AC, 2022 WL 292975, at *6 (D. Or. Feb. 1, 2022) (quoting *Tanya L. L. v. Comm'r*, 526 F. Supp. 3d 858, 869 (D. Or. 2021)); 20 C.F.R. §§ 404.1520c(d), 416.920c(d).

Here, the ALJ did not articulate how he assessed the lay witnesses' submissions. Nevertheless, the Court concludes that this was a harmless error because the lay testimony mirrors plaintiff's own testimony. As previously explained, the ALJ provided specific, clear, and convincing reasons for rejecting plaintiff's subjective symptom testimony, noting the main reasons to be inconsistencies with the objective medical record and plaintiff's activities of daily living. Thus, because the

ALJ adequately discounted plaintiff's subjective symptom testimony, the Court finds the failure to address the substantially similar lay witness testimony was a harmless error.

## IV.    Step Five

Lastly, plaintiff alleges that the ALJ failed to properly include all her relevant limitations in the RFC finding. Specifically, plaintiff contends the ALJ's determination that she can perform work that requires a reasoning level of 2 is inconsistent with the persuasive opinions of Ben Kessler, PsyD., and Dr. South. And since the vocational expert relied on the ALJ's determination of limitations, the vocational expert's testimony about which jobs in the national economy plaintiff could perform had no evidentiary value. Thus, according to the plaintiff, the entirety of the ALJ's step five determination was not based on substantial evidence.

To show that a plaintiff can engage in substantial gainful activity, an ALJ can propose a hypothetical including claimant's relevant limitations to a vocational expert ("VE"). *Roberts v. Shalala*, 66 F.3d 179, 184 (9th Cir. 1995) (citing *Magallanes v. Bowen*, 881 F.2d 747, 756 (9th Cir. 1989)). In posing this hypothetical to a VE, the ALJ "must include 'all of the claimant's functional limitations, both physical and mental' supported by the record." *Thomas v. Barnhart*, 278 F.3d 947, 956 (9th Cir. 2002) (quoting *Flores v. Shalala*, 49 F.3d 562, 570-71 (9th Cir. 1995)).

Dr. South initially found plaintiff could "concentrate and persist on tasks" and "understand and remember instructions," but plaintiff is limited to "infrequent

changes to routine due to anxiety and depression." Tr. 92. Upon reconsideration, Dr. Kessler found plaintiff "could sustain [concentration and persistence capacities] for simple routine tasks" and "could adjust to occasional and gradual changes in work routine." These opinions informed the ALJ's decision to find plaintiff "limited to simple, routine tasks with gradual changes in work routine consistent with a reasoning level of 2 and unskilled work as defined by the Dictionary of Occupational Titles." Tr. 18, 21.

Plaintiff argues that Dr. South and Dr. Kessler's limitations were not properly included in the RFC determination. If they had been, the ALJ would not have found plaintiff capable of completing work with a reasoning level of 2, which requires the plaintiff to "apply commonsense understanding to carry out detailed but uninvolved written or oral instructions." *Dictionary of Occupational Titles*, App. C § 3. However, the Court finds the ALJ properly included all of plaintiff's relevant limitations, so his step five determination was supported by substantial evidence. Courts in this District have found the phrase "detailed but uninvolved" to be equivalent to "simple, routine tasks and instructions." *Patton v. Astrue*, No. 6:11-CV-06423-ST, 2013 WL 705909 (D. Or. Feb. 25, 2013). The ALJ simply translated the examining physicians' determinations into concrete limitations defined in the DOT to match the plaintiff's capabilities. Having provided testimony based on the ALJ's substantially supported determinations, the occupations identified by the VE properly encompass plaintiff's limitations. Therefore, the ALJ's step five determination was supported by

substantial evidence.

In sum, the Court concludes that the ALJ did not err in weighing the medical opinion evidence, or in assessing plaintiff's subjective symptom testimony, or in assessing the lay witness's testimony, nor did the ALJ err at step five.

## CONCLUSION

For the reasons set forth above, the decision of the Commissioner is AFFIRMED and this case is DISMISSED. Final judgment shall be entered accordingly.

IT IS SO ORDERED.

Dated this  21st  day of   March    2022.


_____ /s/Ann Aiken_____

Ann Aiken
United States District Judge